NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0621n.06

No. 12-6100

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 13, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| EMILIO RIVAS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

BEFORE: BOGGS, COLE, and STRANCH, Circuit Judges.

BOGGS, Circuit Judge: Emilio Rivas appeals a sentence of eighty-seven months' imprisonment and four years of supervised release imposed pursuant to his conviction for (1) conspiracy to possess with intent to distribute marijuana and (2) aiding and abetting. On appeal, Rivas argues, first, that the prosecutor violated the terms of his plea agreement, and second, that the court erred in applying a managerial-role enhancement at sentencing. For the reasons given below, we affirm the district court's sentence.

I

In November 2009, Rivas participated in a plan to transport over 900 kilograms of marijuana from Texas to Tennessee.[1] When Rivas arrived by plane in Memphis, Tennessee, the DEA, which had received information of his arrival, immediately placed him under surveillance.

---

[1] Rivas filed a response to the probation office's pre-sentence report (PSR). It contained only two factual objections. One was a request for redaction of certain elements before the PSR was provided to prison officials. The second was an objection to Rivas's use of a co-defendant's car while "he prepared to have his truck transport marijuana." Instead, Rivas stated that he "merely used the vehicle to drive to the airport." Otherwise, the facts of the case as stated in the PSR are not in dispute.

1

The DEA followed Rivas from the airport to a restaurant, where he met both of his co-defendants, one driving a truck with a 53-foot trailer and another with whom Rivas rode in a car to a warehouse in Mississippi while the truck and its driver remained at a truck stop. Shortly thereafter, Rivas and his co-defendant were joined at the warehouse by a fourth, unidentified male who, with Rivas, drove to the truck stop to escort the truck back to the warehouse. After his co-defendant failed several times to drive the truck down the driveway, Rivas ordered him out of the cab of the truck and successfully backed the truck up to the warehouse himself.

Once the co-defendants opened the back doors of the trailer, DEA agents advanced on the truck and the assembled party, detained Rivas's two co-defendants and gave chase to Rivas and the unidentified male. While the DEA searched for and eventually found Rivas, a drug dog was called to the scene. After the dog alerted to drugs in the truck, the agents searched it, finding $12,000 in the cab and approximately 971 kilograms of marijuana hidden in the floor of a seemingly empty trailer. Rivas was arrested and, after being read his rights, admitted that he had been hired to transport marijuana.

On November 10, 2009, a federal grand jury issued a two-count indictment charging him with conspiracy to possess with intent to distribute at least 100 kilograms of marijuana, in violation of 21 U.S.C. § 846, and with aiding and abetting possession with intent to distribute at least 100 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1). Initially, Rivas entered a not-guilty plea. After the court denied his motion to suppress the evidence discovered in the trailer, however, Rivas changed his plea to guilty pursuant to the plea agreement at issue in this case. At the change-of-plea hearing, Rivas agreed that he had read and understood all the terms of the agreement.

Before sentencing, the probation office submitted a PSR that included a two-level enhancement under U.S.S.G. § 3B1.1(c) for Rivas's managerial role in the crime. In addition, the PSR included a recommendation that, because of the managerial role played by Rivas, he did not meet the requirements of the safety-valve provision. Rivas submitted a response to the PSR in which he argued against the application of a managerial-role enhancement and argued for the application of the safety-valve provision. In reply, the government called one of the DEA agents to testify at the sentencing hearing regarding Rivas's managerial role. The court agreed with the PSR's recommendation, overruled Rivas's objection, and applied the two-level enhancement.

The resulting sentencing-guidelines range, which included the two-level managerial-role enhancement and did not include the safety-valve reduction, was 87–108 months, as opposed to the 57–71 months that would have been the range had the court decided not to apply the managerial-role enhancement and granted the safety-valve reduction. Rivas requested and was granted a sentence of 87 months. After the imposition of sentence, Rivas had no further objections. Rivas timely appealed.

II

Because Rivas failed to object to the government's alleged breach of his plea agreement before the trial court but instead raises this claim for the first time on appeal, we review his claim for plain error. *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002). Under plain-error review, the panel may reverse only if it finds "that (1) there is an error; (2) that is plain; (3) which affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Ibid*.

The district court's finding that Rivas played a managerial role in the conspiracy was a finding of fact that supported the enhancement applied to his sentence. There is some debate

3

within this circuit as to what standard of review is applied to sentence enhancements under § 3B1.1. "Traditionally, when we reviewed a district court's imposition of a § 3B1.1 enhancement, we reviewed the district court's factual findings for clear error and its legal conclusions de novo." *United States v. McDaniel*, 398 F.3d 540, 551 n.10 (6th Cir. 2005). Uncertainty was introduced in the wake of the Supreme Court's decision in *Burford v. United States*, which held that a similar provision, U.S.S.G. § 4B1.2, required the district court to conduct a fact-intensive inquiry that should be reviewed "deferentially rather than de novo." 532 U.S. 59, 64 (2001); *see also United States v. Castilla-Lugo*, 699 F.3d 454, 459 (6th Cir. 2012) (finding that *Burford* unsettled the standard of review applied to enhancements under § 3B1.1). This case does not present an opportunity to resolve the issue since Rivas cannot prevail under either standard of review.

III

Rivas advances two arguments in support of a remand for resentencing. First, he claims that the government violated his plea agreement ,and second, he claims that the court incorrectly applied a managerial-role enhancement.

A

Rivas claims that the prosecution breached his plea agreement by guaranteeing that it would recommend a safety-valve reduction while at the same time arguing for a managerial-role enhancement that would, if it were applied, render him ineligible for the reduction. We review the prosecutor's alleged breach of the plea agreement for plain error.

Rivas is correct when he states that courts should closely scrutinize the promises made by prosecutors in plea agreements and hold them to strict performance of the obligations they incur in exchange for a defendant's waiver of his rights. Appellant's Br. at 12–13. "[W]hen a plea

4

rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "Because a defendant obtains a plea agreement only at the expense of his constitutional rights, prosecutors are held to meticulous standards of performance." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007) (internal quotation marks omitted). Nevertheless, plea agreements are still fundamentally contracts and ordinary principles of contract interpretation apply. *Ibid.* Thus, while ambiguities might be construed "against the government," plea agreements are still "enforced according to their terms." *Ibid.*

The plea agreement stated that the government would recommend the application of the safety-valve reduction so long as Rivas satisfied the safety valve's requirements including the two requirements specified. The safety-valve reduction is an authorization for courts to impose penalties below mandatory minimum sentences for certain non-violent, non-managerial, first-time drug offenders. 18 U.S.C. § 3553(f). Specifically, the safety valve directs courts to impose a sentence according to the guidelines "without regard to any statutory minimum sentence" provided the defendant meets five explicitly stated requirements. In order to qualify, the court must find that:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;
(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no

5

relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). As the text of the statute makes clear, there are five unambiguous preconditions that must be met in order to qualify for a safety-valve reduction.

The section of the plea agreement that governed whether the government would recommend the application of a safety-valve reduction stated:

As a condition of the plea, the United States agrees to recommend that the Defendant qualifies under the safety valve provisions of 18 U.S.C. § 3553(f) or U.S.S.G. § 5C1.2 provided that, at the time of sentencing, [Rivas] has complied with the requirements for this reduction including the following: (1) that he has no more than 1 criminal history point; and (2) . . . .

The plea agreement thus contained the promise to recommend the safety-valve reduction and a partial listing of two of the five requirements upon which the promise was conditioned.

Based on the plain text of the plea agreement, there was no breach. Rivas was found by the court to have been a manager in the offense conduct. He was thus ineligible for the safety valve under condition (4). The government did not breach any promise to Rivas because Rivas did not meet all of the antecedent conditions to which he had agreed.

But Rivas is not claiming that the government committed a simple breach of the terms of the plea agreement. Instead, he characterizes the government's actions as an impermissible end-run. *See Moncivais*, 492 F.3d at 662. By implication, Rivas accuses the government of bad faith: "rather than recommending that Mr. Rivas receive a safety valve adjustment—it turned around and argued for the application of a managerial enhancement." Appellant's Br. at 13.

As proof, Rivas offers "[t]wo of the government's strategic decisions." Appellant's Br. at 14. First, the government only listed two of the five safety-valve criteria and in doing so "carefully avoid[ed] providing [] notice" of the other conditions. Appellant's Br. at 14. In fact, notice was given by the fact that the plea agreement conditions the recommendation upon Rivas

6

meeting "the requirements for this reduction *including* the following . . . ." (emphasis added). "Including" implies, strongly, that there are additional conditions beyond those specified in the list. Moreover, the plea agreement told Rivas where to find the other conditions. Rivas was on notice and his attorney was well aware of the conditions Rivas would have to satisfy.

Second, Rivas points to the fact that the government argued for the managerial role enhancement rather than acceding "to an independent determination." Appellant's Br. at 14. This is not evidence of government malfeasance. Had Rivas turned out to have violated *any* of the conditions of the safety-valve adjustment statute, the government would have been fully within its rights to argue against its application. For example, had he been discovered to have had a past criminal conviction or to have used threats of violence in the course of the offense, the government could have brought that fact and Rivas's consequent ineligibility to the court's attention because it is the prosecution's role to advocate for an appropriate sentence under the law. The government's support of the managerial-role enhancement, especially since it arose in reply to Rivas's response to the PSR, was not a breach of the plea agreement.

Rivas nowhere contends that he was unaware of the conditions of the safety-valve adjustment. Not only are the conditions listed in the statute, the government specified the statutory provision in the text of the plea agreement. Rivas also does not contend that the prosecutor initially offered this reduction in bad faith. Rivas did not, for example, allege that the prosecution had conspired with the Probation Office to recommend a managerial-role enhancement despite simultaneously engaging in deceptive plea-agreement negotiations with Rivas, inducing him to bargain his rights away for an illusory promise. Instead, the evidence in the record is that the prosecution made a conditional offer of a safety-valve recommendation, Rivas failed to meet those conditions, and the government legitimately chose not to provide its

proffered benefit in strict accordance with the agreement.

There was no breach of the plea agreement; there was no error. Rivas fails at the first step of plain-error review.

B

Rivas advances a second argument: that the district court simply erred in finding that he played a managerial role in the offense conduct. Regardless of whether the panel reviews for clear error or de novo, his claim fails.

The court applied a managerial-role enhancement in assessing Rivas's sentence under USSG § 3B1.1(c). That provision calls for a 2-level increase in offense level for a defendant found to be an "organizer, leader, manager, or supervisor in any criminal activity" that involved fewer than five participants and was not otherwise extensive. Application Note 4 states that, in determining whether a defendant is an organizer, leader, manager, or supervisor, the court should consider: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of illegal activity, and the degree of control exercised over others." USSG § 3B1.1, comment. (n. 4).

Regardless of the standard of review employed, whether de novo or for clear error, Rivas fails in his claim that the court erred. Were we to review the enhancement de novo, we find that Rivas acted as a manager in the offense conduct based on the unrebutted facts contained within the PSR. He recruited accomplices, admitting at the time of his arrest that he hired one of his co-defendants to haul the marijuana from McAllen, TX to Memphis, TN. Rivas was also instrumental in planning and organizing the offense. He coordinated the marijuana's movement

8

once he arrived by plane in Memphis and he acted as the continuous intermediary, making the initial link-up with the unidentified male at the warehouse and leading the tractor-trailer to the warehouse after meeting his contact. Rivas also exercised control over his co-defendant, the driver of the tractor-trailer, when he ordered him to get out of the truck so that he, Rivas, could back it down the driveway to the warehouse. Lastly, Rivas behaved as a manager or leader would behave. He hired an accomplice to do the laborious (and more dangerous) work of driving the marijuana from Texas to Tennessee, while he flew to Memphis.

Since Rivas fails under de novo review, he necessarily fails under the more deferential review for clear error. He cannot show that the court erred in applying the § 3B1.1 managerial-role enhancement.

IV

For the reasons given above we AFFIRM the district court's judgment of conviction and sentence.