NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0185n.06

No. 13-2349

FILED
Mar 10, 2015
DEBORAH S. HUNT, Clerk

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SERWAN MIZORI, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     SILER, BATCHELDER, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  On May 13, 2013, Serwan Mizori pled guilty to distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  In exchange for his guilty plea, the U.S. Attorney's Office agreed to dismiss the other 9 counts charged in the indictment, including the charge for conspiracy to distribute narcotics.  The written plea agreement, signed by Mizori, expressly provided that the dismissed charges could factor into the court's sentencing determination, and included an appellate waiver provision.  At sentencing, the district court relied on all of the charges—including those that had been dismissed—as well as the drug quantity alleged for the entire conspiracy—472.28 grams—to calculate Mizori's base offense level.  The district court then sentenced Mizori to 240 months' imprisonment, followed by five years of supervised release.  On appeal, Mizori contends that he did not knowingly and intelligently enter into the plea agreement because neither the court, the government, nor his

attorney informed him that he could be sentenced—after dismissal of the conspiracy count—based on the total quantity of drugs sold by all of his co-conspirators during the course of the conspiracy. However, because the very terms of the plea agreement—an agreement signed by Mizori—specified that the court could consider dismissed charges at sentencing, Mizori's plea is valid. Three additional arguments by Mizori contesting the court's application of enhancements and the sentencing determination are also without merit, and Mizori's conviction and sentence must therefore be upheld.

On January 9, 2013, a grand jury returned a 42-count indictment against Serwan Mizori and four co-defendants, charging Mizori with 10 counts related to conspiracy to distribute, possession with intent to distribute, and distribution of cocaine base and other illegal narcotics. On May 13, 2013, Mizori pled guilty to count 34, which charged him with "knowingly and intentionally distribut[ing] a quantity of cocaine base (crack cocaine), . . . and aid[ing] and abet[ting] [another] in this offense."

Pursuant to the terms of the written plea agreement, in exchange for Mizori's guilty plea, the U.S. Attorney's Office agreed to "move to dismiss the remaining counts of the Indictment against [Mizori] at the time of sentencing." Mizori, however, "agree[d] . . . that *in determining the sentence the Court may consider the dismissed charges* in determining the applicable range under the Guidelines, where the sentence should fall within the applicable Guidelines range, and the propriety of any departure from the Calculated Guidelines range." (Emphasis added.) Mizori further waived his "right to appeal any sentence that is at or below the maximum guideline range as determined by the court . . . , and the manner in which the sentence was determined," though he retained "the right to appeal those objections preserved at sentencing that

the Court incorrectly determined the final Guideline range." In signing the plea agreement on

May 10, 2013, Mizori acknowledged:

> I have read this Plea Agreement and carefully discussed every part of it with my attorney. I understand the terms of this Agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this Agreement. No promises or inducements have been made to me other than those contained in this Agreement. No one has threatened or forced me in any way to enter into this Agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(Emphasis added.)

On May 13, 2013, at Mizori's change of plea hearing, the court explained the key aspects

of the plea agreement. The court informed Mizori that a guilty plea to count 34 carried a

maximum sentence of 20 years of imprisonment, explained that in determining his sentence, the

court could "go above the guidelines, . . . go below the guidelines, or . . . stay within the

guideline range," and discussed the consequences of the appellate waiver provision. In response

to the court's questions, Mizori stated that he had had "ample opportunity" to discuss his case

and the plea agreement with his attorney, that he had no questions about the plea agreement, and

that he was satisfied with his attorney's work and representation. Once satisfied that Mizori had

sufficiently pled the facts of the crime, and that his plea had been given "freely and voluntarily,"

the court accepted Mizori's plea.

On September 30, 2013, at Mizori's sentencing hearing, Mizori raised numerous

objections—and withdrew one—to the enhancements proposed in the presentence investigation

report, two of which are relevant to this appeal. First, Mizori challenged the two-point

enhancement under United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(2) for the use of

a credible threat of violence, premised on Mizori's alleged involvement in planning an aborted

robbery scheme during the conspiracy. After hearing witness testimony, the court overruled his

objection, explaining:

> It's clear from the totality of the report here that this defendant who is before the
> Court today and Merza Mizori were running this operation. The Daltons said so
> in their proffers, and in terms of tying the credible threat to rob the undercover[,]
> a person who turned out to be an undercover officer, there are, in the Court's
> judgment, significant ties to this defendant. First, apparently the genesis of the
> robbery is because the pistol is not being returned. I find it interesting that the
> proceeds of the sale of the pistol went to bond out Mr. Jones, who of course, is a
> co-conspirator in this case.
>
> Mr. Davis says that Merza and this defendant and Jones were going to participate
> in the robbery. The meeting at McDonalds is set up so the undercover can meet,
> in the officer's words, "the team." There [are] too many coincidences. No. What
> we have here is . . . a conspiracy between the Mizori brothers, Mr. Jones, [to] rip-
> off the undercover if they could. Now, the reason why this didn't happen is that
> one of the conspirators, Mr. McDonalds, and a Lansing Police Department unit
> show up. And therefore that meeting did not go any further. But that, in the
> Court's judgment, there is sufficient evidence to conclude by a preponderance of
> the evidence the defendant simply cannot sever himself off from this sort of
> activity, which is so directly tied to this conspiracy of control—of the Mount
> Vernon neighborhood. . . . The argument essentially is well, he might be
> responsible for some things, but he is not responsible for others. But the Court
> finds the totality of the circumstantial evidence here, recognizing that this
> defendant did not show up at any—actually show up at any meeting. I'm satisfied
> by the preponderance of the evidence against that the enhancement should be
> applied.

Second, the court addressed Mizori's challenge to the drug quantity used to calculate his

base offense level. In his sentencing memorandum, Mizori argued that because he was "not a

manager or supervisor of the criminal activity of his co-defendants," he should only be held

responsible for the 93.7 grams of cocaine base attributable to him, rather than the 472.28 grams

of cocaine base that comprised the entire conspiracy. At the sentencing hearing, however, after

the court found that Mizori was a manager or supervisor of his co-defendants, Mizori's counsel

withdrew the objection, stating:

> Your Honor, I think a fair statement of the law does not allow me to maintain the
> objection at this point, because I believe the caselaw indicates that in the event the

> Court finds that Mr. Mizori has a leadership role, it would be fair to attribute the drug quantity that the Court sees before it. My argument was largely premised on the issue of the leadership role. So I don't believe in fairness or ethically I can maintain that objection.

After addressing Mizori's remaining objections, the court asked defense counsel if he was satisfied that the court had addressed all of his arguments on the record, to which defense counsel replied, "I am." The court then calculated Mizori's guidelines range to be 360 months' imprisonment to life, and sentenced him to 240 months' imprisonment, the statutory maximum.

On appeal, Mizori contends that: (1) he did not knowingly and intelligently plead guilty because neither the court, the government, nor his attorney informed him that he could be sentenced—after dismissal of the conspiracy count—based on the total quantity of drugs sold by all of his co-conspirators during the course of the conspiracy; (2) the district court erred in attributing the entire drug quantity involved in the uncharged conspiracy to Mizori without making a specific factual finding as to the scope of his involvement; (3) his sentence was procedurally or substantively unreasonable because the court failed to address his argument regarding sentencing disparities among defendants; and (4) the court erred in enhancing his sentence for his alleged involvement in an aborted robbery scheme.

Mizori's plea is valid because it was entered into knowingly, intelligently and voluntarily, the three factors required under *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). Though Mizori now contends that his plea was not entered into knowingly and intelligently because he did not understand how the dismissed charges would factor into the court's sentencing determination, the terms of the written plea agreement demonstrate otherwise. Immediately after agreeing to "move to dismiss the remaining counts of the Indictment . . . at the time of sentencing," the U.S. Attorney's Office explicitly and unambiguously informed Mizori that the court could consider such counts in determining his sentence. Mizori agreed "that *in*

*determining the sentence the Court may consider the dismissed charges* in determining the applicable range under the Guidelines, where the sentence should fall within the applicable Guidelines range, and the propriety of any departure from the Guidelines range." (Emphasis added.) Further, by signing the agreement, Mizori acknowledged that he had "read th[e] Plea Agreement and carefully discussed every part of it with [his] attorney," including "the consequences of entering into [it]." Because any reasonable person, having read the dismissed counts provision, would understand that the court could consider dismissed charges at sentencing, Mizori cannot now claim that his plea was invalid because he failed to comprehend such a straightforward provision. "Plea agreements are contractual in nature, and . . . courts are guided by general principles of contract interpretation when construing [them]." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). The "determinative factor in interpreting a plea agreement is not the parties' actual understanding of the terms of the agreement," but rather how "a reasonable person would interpret its words." *Id.* at 663.

In addition, the fact that the court did not discuss the impact Mizori's dismissed conduct could have on his sentence at his sentencing hearing does not render an unambiguous provision invalid. Though the court has a duty to "inform the defendant of, and determine that the defendant understands" the enumerated aspects of his plea agreement, Fed. R. Crim. P. 11(b)(1), neither Rule 11 nor our court's precedents required the court to discuss how Mizori's dismissed counts could factor into the court's sentencing determination.

Because a review of the change of plea hearing transcript reveals that the court met its Rule 11 obligations and ensured that Mizori understood the key aspects of his agreement, the court correctly determined that Mizori's plea was knowing and intelligent. The court informed Mizori that a guilty plea carried a maximum sentence of 20 years' imprisonment and discussed

the consequences of the appellate waiver provision. The court also stressed that the calculated sentencing guidelines would be advisory, explained that he could "go above the guidelines, . . . go below the guidelines, or . . . stay within the guideline range," and ensured that no one had predicted what Mizori's sentence might be. In response to the court's questions, Mizori stated that he had had "ample opportunity" to discuss his case and the plea agreement with his attorney, and that he had no questions about the agreement. Thus, the record supports the conclusion that Mizori's plea was knowingly and intelligently made. Moreover, Mizori appears to have obtained a substantial benefit from the plea bargain: limiting his sentence to 240 months when otherwise it might well have been over 360 months.

Mizori also appears to suggest that his attorney's failure to inform him that the total quantity of drugs sold during the course of the conspiracy could factor into the court's sentencing determination rendered his plea unknowing and unintelligent. Because it is not apparent from the record that trial counsel was ineffective, any ineffective assistance claim in this regard is not appropriately addressed on direct appeal. Mizori stated at the change of plea hearing that he had had "ample opportunity" to review the plea agreement with his attorney, and there is no evidence regarding what advice Mizori actually received or whether his attorney effectively explained Mizori's potential sentencing liability. Because such facts are more appropriately developed at the district court level, we do not reach this argument. "The more preferable route for raising an ineffective assistance of counsel claim is in a post-conviction proceeding under 28 U.S.C. § 2255, whereby the parties can develop an adequate record." *United States v. Valdez*, 362 F.3d 903, 913−14 (6th Cir. 2004) (internal quotations and citation omitted).

Mizori's sentencing arguments are also meritless. With respect to Mizori's challenge to the drug quantity used to calculate his base offense level, that claim was waived because he did

not preserve the objection at sentencing. "When a defendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) (internal quotations and citation omitted). Pursuant to the terms of Mizori's plea agreement, Mizori waived his "right to appeal any sentence that is at or below the maximum guideline range as determined by the court . . . , and the manner in which the sentence was determined," except for "those objections preserved at sentencing." Though Mizori argued in his sentencing memorandum that he should only be held responsible for the 93.7 grams of cocaine base attributable to him, rather than the entire quantity involved in the drug distribution conspiracy, during his sentencing hearing, his counsel withdrew the objection. Because there is nothing in the record to suggest that Mizori misunderstood the scope of his waiver of appellate rights, and the court complied with the Federal Rules of Criminal Procedure, Rule 11 (b)(1)(N) by informing Mizori of the appellate waiver provision and ensuring that he understood it, Mizori cannot raise an unpreserved objection on appeal.

Mizori contends, however, that his counsel effectively preserved the objection to drug quantity by also objecting to his classification as a manager or supervisor, because his counsel believed that the court's "drug quantity determination was coterminous with the question of whether Mizori was a [leader]." This argument fails for two reasons. First, Mizori does not contest on appeal the court's finding that he was a manager or supervisor, the issue his counsel believed was determinative of the drug quantity to be applied. Second, the particular objection Mizori raises to drug quantity here—that the court "failed to make sufficiently particularized findings on the issue of drug quantity—was never raised below, either in the sentencing memorandum or at the hearing. In fact, during the sentencing hearing, Mizori's counsel

conceded that should the court find that he was a manager or supervisor—a particularized finding counsel appears to have found sufficient—"it would be fair to attribute the drug quantity [472.28 grams] that the Court sees before it."

Mizori similarly waived his objection that the court failed to consider his sentencing uniformity argument, by not raising the argument during the sentencing hearing. In his sentencing memorandum, Mizori argued that the application of a three-point leadership enhancement, coupled with the corresponding elevated drug quantity, would "result in an unwarranted sentence disparity between Mr. Mizori and his co-defendants and other unrelated defendants who are similarly situated," in violation of 18 U.S.C. § 3553(a)(6). However, during the sentencing hearing, Mizori never raised this argument, and when the court asked defense counsel if he was satisfied that the court had addressed all of his arguments on the record, defense counsel replied, "I am." Mizori's pre-hearing objection did not preserve the objection "at sentencing," as required by the appellate waiver provision in his plea agreement, and consequently he waived his right to appeal the issue. We have repeatedly held that when a plea agreement's terms require a defendant to preserve an objection "at sentencing," pre-hearing objections are not enough to preserve the issue for appeal. *See United States v. Deanda*, 450 Fed. App'x 498, 499−500 (6th Cir. 2011); *United States v. Flowers*, 428 Fed. App'x 526, 529 (6th Cir. 2011).

Lastly, in light of our previous holdings, even if we assume that the court erred in applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(2) for Mizori's alleged involvement in planning an aborted robbery scheme, reversal is not warranted because the error was harmless. Mizori concedes that any error in this regard would be harmless if we uphold the drug quantity, as we have. Because Mizori's sentencing guidelines range would have been the

statutory maximum 240 months, with or without the two-level enhancement, a misapplication of the enhancement would not have caused Mizori to receive a more severe sentence. "An error may be harmless only where the government is able to prove that none of the defendant's substantial rights have been affected by the error." *United States v. Oliver*, 397 F.3d 369, 381 (6th Cir. 2005). "To establish harmless error such that this Court lets stand a defendant's sentence in spite of errors at . . . sentencing below, . . . the government must demonstrate . . . *with certainty* that the error at sentencing did not cause the defendant to receive a more severe sentence." *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007) (internal quotations and citation omitted) (emphasis in original). The guidelines range calculated by the court, after applying the two-level enhancement, was 360 months' imprisonment to life; without application of the two-level enhancement, the sentencing guidelines range would have been 292 to 365 months' imprisonment (based on an offense level of 36 and criminal history category of V). U.S.S.G. Sentencing Table, ch. 5, pt. A. Because both guidelines ranges would have ultimately resulted in a range of 240 months—the statutory maximum—pursuant to U.S.S.G. § 5G1.1(a), the misapplication of the two-level enhancement did not affect Mizori's substantial rights. The court's own statement further supports this finding: "I will state for the record that *I would give this sentence* [240 months' imprisonment] *even if I had sustained the objections to* maintaining a residence and the firearm enhancement *and the credible threat of violence enhancement*[.] I would still give the sentence I am about to impose." (Emphasis added.)

The judgment of the district court is affirmed.