RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

JULIANNA JENKINS HAWKINS (24-6002); JIMMY CRAFTON, JR. (25-5063),

        *Defendants-Appellants*.

Nos. 24-6002/25-5063

───────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Winchester.
No. 4:23-cr-00011—Curtis L. Collier, District Judge.

Decided and Filed: January 20, 2026

Before: GIBBONS, STRANCH, and DAVIS, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:** Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant Hawkins. Brandon Douglas Raulston, Chattanooga, Tennessee, for Appellant Crafton. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

───────────────

**OPINION**

───────────────

JULIA SMITH GIBBONS, Circuit Judge. In this consolidated criminal appeal, Julianna Hawkins and Jimmy Crafton, Jr., challenge the sentences imposed upon them by the district court. Hawkins and Crafton both pled guilty to charges regarding their involvement in a

conspiracy to possess and distribute methamphetamine in the Eastern District of Tennessee.  The defendants now ask us to find that their sentences are unreasonable under our circuit's precedent.

For the reasons discussed below, we affirm Crafton's sentence as reasonable but reverse the district court's order sentencing Hawkins and remand her case for resentencing.

**I.**

From June 9, 2022, to February 22, 2023, Defendants-Appellants Julianna Hawkins and Jimmy Crafton, Jr., were involved in a conspiracy to distribute methamphetamine in the Eastern District of Tennessee.  Crafton provided resale amounts of methamphetamine that Hawkins, among others, helped to distribute.

**A.  The Underlying Conspiracy and Investigation**

While conducting surveillance on Hawkins's residence on June 9, 2022, investigators for the Coffee County Sheriff's Department observed Crafton exit Hawkins's home and drive away. After unsuccessfully attempting to conduct a traffic stop of Crafton, investigators returned to Hawkins's residence and conducted a search of the premises with her consent.  This search yielded approximately 108.5 grams of methamphetamine with a confirmed substance purity of 97%.  Hawkins waived her *Miranda* rights and told investigators that she purchased the methamphetamine from Crafton.  She was not arrested at that time.

A little over seven months later, on January 31, 2023, a confidential source ("CS") hired by law enforcement purchased from Hawkins 14.16 grams of methamphetamine with a confirmed purity of 98%.  The next day, law enforcement sent another CS to purchase methamphetamine from Hawkins and Crafton.  Hawkins sold the CS 5.88 grams of methamphetamine, confirmed 99% pure, and Crafton sold the CS 54.69 grams of methamphetamine, confirmed 98% pure.  On February 6, 2023, a CS purchased 24.16 grams of methamphetamine, confirmed 98% pure, from Crafton, with Hawkins present.  Law enforcement arrested Crafton shortly after on February 22, 2023.  During an interview with police, Crafton stated that his source had provided him about ten ounces of methamphetamine every two weeks

over the past seven months, and he estimated that Hawkins purchased "85 percent" of his supply. DE 64, Hawkins Am. PSR, Page ID 278.

During her own interview with law enforcement, Hawkins confirmed that she began purchasing methamphetamine from Crafton about seven months prior, in June of 2022. Hawkins told investigators that the most methamphetamine she had ever purchased from Crafton was eight ounces, but she "normally purchased four-ounce-quantities from him." *Id.* Hawkins did not specify how often she purchased methamphetamine from Crafton and recalled that she typically resold the methamphetamine in 3.5-gram quantities.

## B. Hawkins's Sentence

The grand jury indicted Hawkins on three counts: (1) conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; (2) possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (3) distribution of a substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). She ultimately pled guilty to count three in exchange for the dismissal of the remaining counts.

The amended presentence investigation report ("PSR") held Hawkins responsible for a total of 3,414.62 grams of methamphetamine (actual). The PSR arrived at that number by taking the total amount of methamphetamine Crafton claimed he received each month (10 ounces every two weeks, so 20 ounces total each month) and multiplying that number by seven (for the seven months Hawkins claimed she obtained the drugs from Crafton), which yielded 140 ounces. The PSR then calculated the amount of drugs that made up 85% of those 140 total ounces, relying on Crafton's statement that Hawkins purchased 85% of Crafton's biweekly supply. The PSR determined that 85% of 140 ounces yielded 119 ounces, or 3,306.12 grams. The PSR then determined the final total of 3,414.62 by adding the 108.5 grams that investigators found during the search of Hawkins's residence on June 9, 2022, to those 3,306.12 grams. After accounting for pertinent adjustments, the PSR set Hawkins's total offense level at 31. Given her criminal

history category of III, the PSR calculated a Guidelines range of 135 to 168 months' imprisonment.

Hawkins objected to the PSR, challenging specifically its use of "averaging" to prove the purity of ghost weight and its calculation of her base offense level based on Crafton's statements regarding the amount of methamphetamine Hawkins purchased from him. DE 58, Obj. to PSR, Page ID 154–56; DE 87, Tr. Sent. Hr'g, Page ID 559–62. Hawkins also moved for a downward variance from her Guidelines range, arguing that a range of 87 to 108 months' imprisonment was more appropriate due to her "personal characteristics" and because the Guidelines range overstated her culpability. DE 62, Mot. Downward Variance, Page ID 200. And the government separately requested a downward departure.

At Hawkins's sentencing hearing on October 30, 2024, the district court departed from the Guidelines and lowered her offense level to 28, which decreased her advisory sentencing range to 97 to 121 months' imprisonment. Hawkins renewed her objections to the PSR and requested a downward variance from the new Guidelines range imposed by the court. Hawkins argued that her characteristics, as well as those of her case, in addition to potential sentencing disparities between Hawkins and previous defendants due to methamphetamine's higher purity in today's drug trade, warranted a downward departure. The government opposed a variance from Hawkins's lowered Guidelines range. After balancing the factors set out in 18 U.S.C. § 3553(a), the district court denied Hawkins's request for a variance and imposed a sentence of 98 months' imprisonment.

## C. Crafton's Sentence

The grand jury indicted Crafton on two counts: (1) conspiracy to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and (2) conspiracy to distribute a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Crafton eventually pled guilty to a lesser included offense of count one. The amended PSR set Crafton's

offense level at 35 with a criminal history category of III, resulting in a Guidelines range of 210 to 240 months' imprisonment.[1]

Prior to his sentencing hearing, Crafton filed a motion requesting that the court vary downward from his Guidelines range. At his sentencing hearing on January 15, 2025, Crafton renewed his request for a downward variance for two reasons which mirrored the arguments presented in his original motion. First, Crafton argued that his "general personal characteristics," including his "age, health issues, his background, [and] things of that nature," supported a downward variance. DE 97, Tr. Sent. Hr'g, Page ID 723–24. Second, Crafton asserted that his prior 1996 conviction at age twenty-two for controlled substance distribution, which counted for three out of his four criminal history category points, overstated his criminal history, thereby unfairly increasing his Guidelines range. Crafton also noted that because he completed the sentence for that previous conviction fourteen years ago, under § 4A1.1(a) of the Sentencing Guidelines only one year remained for it to count towards his sentencing in this case. *See* U.S.S.G. § 4A1.1(a).

The district court denied Crafton's request. The court determined that in the fourteen years since Crafton's release from his sentence for his controlled substance distribution conviction, he had not demonstrated that he could maintain a law-abiding record for a substantial time. And a defendant's ability to demonstrate that he can maintain a law-abiding record, the court explained, is the very rationale for no longer considering previous convictions at sentencing after fifteen years under § 4A1.1(a). The district court also denied a downward variance based on Crafton's other proffered basis, which the court referred to as his "physical history and characteristics." DE 97, Tr. Sent. Hr'g, Page ID 729. The court reasoned that the "Bureau of Prisons is able to take into account" those "issues." *Id.* at 730. The district court subsequently sentenced Crafton to 210 months' imprisonment.

---

[1]Crafton's Guidelines range was actually 210 to 262 months' imprisonment, but because that range exceeded the statutory maximum of 240 months, the district court capped the sentence at 240 months' imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(C), 846. And while Crafton requested an extension of time to file objections to his PSR, he did not ultimately file any objections, or object during sentencing, to his PSR.

Crafton and Hawkins each filed a timely notice of appeal.  Shortly thereafter, our court consolidated their cases for purposes of appeal.

**II.**

We review sentences imposed by the district court, whether inside or outside the Sentencing Guidelines range, for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  The abuse of discretion standard covers claims challenging a sentence's substantive and procedural reasonableness.  *United States v. Ruiz*, 777 F.3d 315, 319 (6th Cir. 2015).  A sentence is procedurally reasonable "where the trial court follows proper procedures and gives adequate consideration to the § 3553(a) factors."  *United States v. Johnson*, 26 F.4th 726, 734 (6th Cir. 2022) (citation modified).  On the other hand, substantive reasonableness concerns whether the district court properly weighed the § 3553(a) factors and "at bottom, addresses a claim that a sentence is too long."  *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022) (citation modified).  We afford sentences within the Guidelines range a presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008).

**III.**

The district court must impose a sentence that is both procedurally and substantively reasonable.  *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019).  Hawkins and Crafton now challenge the reasonableness of their individual sentences.  We review their claims in turn.

**A. The Reasonableness of Hawkins's Sentence**

Hawkins asks us to find that her sentence of 98 months' incarceration was both procedurally and substantively unreasonable.  For the reasons discussed below, we reverse Hawkins's sentence because it is procedurally unreasonable.

**a. Determining Procedural or Substantive Reasonableness Review**

Hawkins argues that her reasonableness claim challenges *both* the procedural and substantive reasonableness of her sentence.  It is true that we have acknowledged the "border between procedural and substantive reasonableness can be blurry, and the analysis often overlaps."  *United States v. Small*, 988 F.3d 241, 258 (6th Cir. 2021).  Yet we have also

recognized that "whether a district court improperly relied on erroneous information or assumptions in fashioning a sentence relates to the *procedural reasonableness* of the sentence." *Id.* (emphasis added); *see United States v. Miller*, 73 F.4th 427, 430 (6th Cir. 2023). We have also held that challenges based on "unreasonable speculation"[2] concern procedural reasonableness. *Parrish*, 915 F.3d at 1047.

Hawkins's argument on appeal is that the district court erred by relying on Crafton's statement to calculate the estimated quantity of methamphetamine that Hawkins was responsible for distributing. Hawkins's amended PSR used Crafton's statement that Hawkins "purchased 85 percent of the [ten ounces of methamphetamine Crafton received every two weeks]" to calculate the bulk of the total 3,414.62 grams of methamphetamine attributed to her. *See* DE 64, Hawkins Am. PSR, Page ID 278–79. The PSR then used the total drug estimate to calculate Hawkins's total offense level of 31 (after adjustments). The district court concluded that the PSR accurately stated the facts and correctly calculated Hawkins's Guidelines range. Thus, her challenge addresses the district court's factual findings underlying her total offense level, so we will treat it as a challenge to her sentence's procedural reasonableness. *See Small*, 988 F.3d at 258; *Miller*, 73 F.4th at 430; *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008) ("A district court's drug-quantity determination is a factual finding."); *United States v. Warman*, 578 F.3d 320, 349–50 (6th Cir. 2009) (confirming the defendant's drug quantity claim was "one of procedural unreasonableness").

### b. Procedural Reasonableness

For a sentence to be procedurally reasonable, the district court must properly calculate the Guidelines range and treat it as advisory, consider the § 3553(a) factors, avoid considering impermissible factors, and adequately explain its chosen sentence. *See Miller*, 73 F.4th at 429–30. But most importantly to Hawkins's challenge on appeal, the district court must base its

---

[2]Hawkins cites only the unpublished opinion *United States v. Ewing*, 832 F. App'x 416 (6th Cir. 2020) to argue that her challenge also relates to her sentence's substantive reasonableness because it is based on speculative information. However, we recognized in *United States v. Parrish*, a published decision, that such claims address procedural reasonableness. 915 F.3d at 1047. And we have recognized, albeit in another unpublished decision, that the holding of *United States v. Parrish* is binding in our circuit. *See United States v. Watson*, 780 F. App'x 245, 247 (6th Cir. 2019).

sentence on facts that are not clearly erroneous. *See id.* at 430. We will not disturb the district court's factual findings, including drug quantity estimates, unless we are satisfied that they are indeed clearly erroneous. *Jeross*, 521 F.3d at 570.

Thus, to succeed here, Hawkins must satisfy us that the district court committed clear error by relying on Crafton's statement to calculate the drug amount attributable to Hawkins. *See id.*; *United States v. Histed*, 93 F.4th 948, 955 (6th Cir. 2024). The district court's estimate must ultimately be supported by a preponderance of the evidence, and the government bears the burden of proof. *Histed*, 93 F.4th at 955; *United States v. Simpson*, 138 F.4th 438, 446 (6th Cir. 2025). To properly determine drug quantity when the exact amount cannot be ascertained, "[t]he district court can make a reasonable estimate based on physical evidence or testimony." *Histed*, 93 F.4th at 955 (quoting *United States v. Tisdale*, 980 F.3d 1089, 1096 (6th Cir. 2020)); *United States v. Treadway*, 328 F.3d 878, 885 (6th Cir. 2003). However, the evidence underlying the district court's estimate "must have a minimal level of reliability" and the court should "err on the side of caution" when making such estimates. *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004) (citation modified).

Here, the district court accepted as true and accurate the PSR's calculation that Hawkins was responsible for 3,414.62 total grams of methamphetamine. The PSR calculated most of that amount, 3,306.12 grams, by relying on Crafton's statement that he received ten ounces of methamphetamine every two weeks over seven months and Hawkins purchased 85% of his supply. The PSR calculated the remainder, 108.5 grams, by relying on the methamphetamine investigators physically seized from Hawkins on June 9, 2022. At sentencing, the district court heard argument on Hawkins's objection to the PSR's reliance on Crafton's statement for its drug estimate and correctly identified that Crafton's statement needed to meet a "minimal level of reliability." *See* DE 87, Tr. Sent. Hr'g, Page ID 559–65.

The court concluded that Crafton's statements exhibited the requisite minimum indicia of reliability for two stated reasons. First, the court recognized that no evidence suggested that Crafton meant that he sold 85% of his methamphetamine supply to Hawkins only at certain times; instead, the plain meaning of Crafton's statement pointed to Hawkins purchasing 85% of his total supply over the relevant seven-month period. Second, the court found that Hawkins

never directly stated that she stopped dealing methamphetamine at any point due to any health issues, as she argued at sentencing.  Instead, the court concluded that the record showed that Hawkins in fact continued to distribute methamphetamine while hospitalized for a time during the commission of the conspiracy.  While hearing argument concerning Hawkins's objections to the PSR's drug estimate, the district court also attempted to clarify whether Hawkins ever stated that she was dealing in lower quantities than the PSR suggested, and the government responded that it could not confirm whether Hawkins made any such statements.

As a threshold matter, we are satisfied that the district court did not simply "summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence."  *See Treadway*, 328 F.3d at 885 (citation modified); *see also United States v. Bradley*, 897 F.3d 779, 784 (6th Cir. 2018) ("In the context of drug-quantity determinations, the court must rule on disputed calculations.").  We are further satisfied that the district court created a record sufficient to facilitate our review of its decision.  *See Histed*, 93 F.4th at 955 (confirming that to create a clear record to facilitate our review, the district court must specify the evidence it relies upon, make specific factual findings, articulate the methodology it uses, and explain how it reached the final figure).

The question we must answer now is whether it was clear error for the district court to accept the PSR's drug estimate as true when the PSR relied on Crafton's statement to calculate the bulk of the drugs attributable to Hawkins.  We hold that the answer is yes.  While the minimum indicia of reliability standard applied to evidence offered at sentencing is a "relatively low hurdle," it nonetheless still requires "*some* evidentiary basis beyond mere allegation." *United States v. Moncivais*, 492 F.3d 652, 659 (6th Cir. 2007) (emphasis in original) (citation modified); *United States v. Johnson*, 732 F.3d 577, 583 (6th Cir. 2013).

The evidentiary bases advanced by the government as corroboration do not support Crafton's statement.  *See Moncivais*, 492 F.3d at 659; *United States v. Woodside*, 895 F.3d 894, 902–03 (6th Cir. 2018) (finding that there was "ample testimonial evidence" concerning the district court's drug estimate due to corroborated testimony).  Moreover, the evidence on the record provides no corroboration for Crafton's statement otherwise, and his statement, made out of court and lacking in detail and specificity, is therefore mere allegation.  *Cf. Moncivais*,

492 F.3d at 659 ("The district court found that [the co-conspirator's] statement was 'richly detailed,' and was both internally and externally consistent."). We will first address the government's arguments before turning to the statement's broader issues.

First, the government contends that Crafton's statement was consistent with "Hawkins's own admissions." CA6 R. 34, Appellee Br., at 16. We disagree. The amended PSR stated that Hawkins "declared the *most* methamphetamine she purchased from Crafton was approximately eight ounces, but she *normally* purchased four-ounce-quantities from him. *She did not specify how often she obtained methamphetamine from Crafton*." DE 64, Hawkins Am. PSR, Page ID 278 (emphasis added). Although Hawkins's statement confirms that she purchased eight ounces from Crafton at some point, which would indeed be 85% of his biweekly ten-ounce supply, she maintained that she *normally* purchased four-ounce quantities from him. *See id.* This statement therefore implies that Hawkins regularly purchased less than half of Crafton's biweekly ten-ounce supply, not 85% of it as Crafton claimed. *See id.* As a result, her statement is not consistent with Crafton's and instead appears to contradict it.

Second, the government points to the 108.5 grams physically seized from Hawkins and the "98.86 grams" purchased by a CS "from her and Crafton over a 7-day period in early 2023" as physical evidence corroborating Crafton's statement. CA6 R. 34, Appellee Br., at 17–18. Again, we disagree. Since 108.5 grams converts to just under four ounces (3.83 ounces, to be exact), this amount seized from Hawkins corroborates *her* statement that she normally purchased four-ounce quantities from Crafton. And the PSR contains no indication that Hawkins sold 98.86 grams to a CS; instead, it states only that Hawkins sold an additional 14.16 grams of methamphetamine to a CS on January 31, 2023, and 5.88 grams on February 1, 2023. These sales add up to a total of 20.04 grams, which is less than one ounce of methamphetamine. All other amounts of methamphetamine that the PSR ties to purchases by a CS came from Crafton, not Hawkins. As a result, the physical evidence presented by the PSR also does not provide any evidentiary basis to corroborate Crafton's statement.

We find no other evidence on the record to keep us from concluding that Crafton's statement is precisely the kind of mere allegation that the district court cannot rely on. *See Moncivais*, 492 F.3d at 659; *United States v. Johnson*, 732 F.3d at 583. Accordingly, we are left

with a definite and firm conviction that a mistake was committed through the district court's acceptance of the PSR's reliance on that statement to calculate the drug estimate. *See United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010). We cannot find a case where we have affirmed a district court's drug estimate based on such little information as was presented here—essentially the co-conspirator's statement alone. Where we have affirmed a district court's heavy reliance on co-conspirators' statements, we have most often done so when the co-conspirators provided *testimony*. *See, e.g.*, *United States v. Mosley*, 53 F.4th 947, 962 (6th Cir. 2022) ("[The district court's] reasoned estimate follows from [the co-conspirator's] testimony."). And more often than not, we have affirmed reliance on testimony when that testimony was corroborated. *See United States v. Henley*, 360 F.3d 509, 515–16 (6th Cir. 2004) (where we affirmed the district court because "[d]uring the sentencing hearing, the district court referenced the testimony of various witnesses"); *Bradley*, 897 F.3d at 785 (affirming the district court's reliance on the probation officer's calculation, which in turn relied on co-conspirator testimony presented at trial); *Woodside*, 895 F.3d at 902-03 (affirming the district court based on "ample testimonial evidence").

Thus, it is undoubtedly true, and the government correctly notes, that "[t]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *Jeross*, 521 F.3d at 570 (quoting *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004)). But we have not recognized that testimonial evidence in the form of statements merely relayed by the PSR, without any testimony whatsoever and with no other supporting evidence, may be sufficient.

Moreover, we are aware of only a handful of instances in which we have affirmed the use of co-conspirator statements not in the form of actual testimony—both of which are highly distinguishable from Hawkins's case. For example, in *Swanberg*, we upheld the district court's drug estimate based on a co-conspirator's statements contained only in the PSR, alleging that the defendant purchased 75% of the cocaine the co-conspirator obtained. 370 F.3d at 625. However, the co-conspirator's statement was consistent with other evidence presented. *See id.* Similarly, in *Moncivais*, we affirmed the district court's reliance on the drug calculation in the PSR, which itself relied heavily on a co-conspirator's proffered statement discussing the timeline

of the defendant's involvement, to calculate the drug estimate.  492 F.3d at 655–56, 658–60. However, not only did the government call a federal agent to testify at Moncivais's sentencing as to the reliability of the proffered statement, but the *Moncivais* court further found that the statement was "full of detail" and both "internally and externally consistent" *Id.* at 656, 659.

The statements made outside of testimony in *Swanberg* and *Moncivais* therefore reflected much stronger indicia of reliability than the facts on this record.  We cannot say that Crafton's three-line statement concerning Hawkins's involvement in their drug distribution scheme was bolstered by any other statement in the record, nor that it is "full of detail."  *See Swanberg*, 370 F.3d at 625; *Moncivais*, 492 F.3d at 656; *see also United States v. Armstrong*, 920 F.3d 395, 398–99 (6th Cir. 2019) (affirming district court's reliance on statements made by a confidential informant that were corroborated by two police officers and contained extensive detail). Accordingly, we cannot find that the logic in our previous few cases affirming drug estimates based on co-conspirators' statements not offered as testimony extends to Hawkins's case.

While we will often refrain from finding clear error where two permissible views of the evidence exist, *see Jeross*, 521 F.3d at 570, we do not find the district court's view of the evidence in Hawkins's case permissible.  The court's view here led to an approximation of drug quantity that was clearly erroneous as it was not supported by competent evidence in the record. *See id.*  If Crafton had testified as to his statement, then the district court could have observed and analyzed its veracity, and cross-examination could have tested the statement's—and Crafton's—reliability.  *See, e.g.*, *United States v. Hough*, 276 F.3d 884, 892 (6th Cir. 2002) (affirming drug calculation based on testimony); *Mosley*, 53 F.4th at 962 (where we affirmed the district court's reliance on co-conspirator's statement because "after hearing Bravo's live testimony, [the court] found him credible").  But the district court in Hawkins's case was not afforded this opportunity.  And as we have discussed at length, we do not find sufficient evidence on the record to corroborate Crafton's statement otherwise, which was so lacking in detail and specificity.  *Cf. United States v. Johnson*, 732 F.3d at 583 ("[B]oth [the co-conspirator's] out-of-court proffer and her testimony at sentencing was detailed, consistent with earlier statements, and corroborated by other facts.").  We are thus persuaded that the district court, by relying so heavily on Crafton's statement, failed to carry out its duty to err on the side

of caution when calculating the drug estimate regarding Hawkins in order to appropriately underestimate the amount of drugs attributable to her. *See United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008); *Sandridge*, 385 F.3d at 1037.

As a result, we reverse the district court's imposition of Hawkins's sentence and remand for resentencing. The district court committed clear error by relying on Crafton's scant, uncorroborated, and out-of-court statement to estimate the bulk of the drugs attributable to Hawkins, resulting in a procedurally unreasonable sentence. At resentencing, the court should limit its review to the evidence currently in the record regarding the drug quantity determination. *See Histed*, 93 F.4th at 957 ("On remand, the court should limit its review to the evidence in the record in making its drug-quantity determination."). The government initially had the burden to produce sufficient evidence on this issue at sentencing, and we will not grant it a "second bite at the apple" to present additional evidence that it did not use at Hawkins's original sentencing hearing. *See id.* (quoting *United States v. Mukes*, 980 F.3d 526, 540 (6th Cir. 2020)); *United States v. Goodman*, 519 F.3d 310, 323 (6th Cir. 2008); *United States v. Gill*, 348 F.3d 147, 156 (6th Cir. 2003).

**B.   The Reasonableness of Crafton's Sentence**

Crafton asks us to find that his sentence of 210 months' imprisonment is both procedurally and substantively unreasonable. For the reasons discussed below, we affirm Crafton's sentence as reasonable.

**a.   Procedural Reasonableness**

Crafton argues that the district court committed procedural error by failing to consider his arguments concerning his lower likelihood of recidivism based on his advanced age and declining to make a finding about whether his health issues presented an extraordinary physical impairment in fashioning his sentence. "In determining procedural reasonableness, we review whether the district court properly calculated the Guidelines range, treated the Guidelines as advisory, considered the 18 U.S.C. § 3553(a) factors, selected a sentence based on a reasonable determination of the facts, and adequately explained the sentence." *United States v. Battaglia*, 624 F.3d 348, 350–51 (6th Cir. 2010). The sentencing judge must also set forth enough to

satisfy our court that he has considered the parties' arguments and "has a reasoned basis for exercising his own legal decisionmaking authority." *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (citation modified); *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008).

We must acknowledge at the outset of this inquiry that Crafton failed to object to the district court's procedures in sentencing him when prompted by the district judge during his sentencing hearing.  Following its announcement of Crafton's sentence, the court explicitly asked the parties whether they had any objections not previously raised to the sentence announced, and both parties replied in the negative.  The government contends that Crafton's failure to timely raise a procedural challenge at sentencing means that our court should evaluate his procedural reasonableness claim on appeal for plain error.  We agree. *See United States v. Jeter*, 721 F.3d 746, 755 (6th Cir. 2013) (recognizing that plain error review applies where the defendant failed to object to procedural reasonableness).

To establish that the district court plainly erred as to his sentence's procedural reasonableness, Crafton must show: "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights[,] and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (citation modified).  Crafton maintains on appeal that his sentence is procedurally unreasonable because the district court failed to consider his arguments concerning his age and health issues when fashioning his sentence.  Specifically, Crafton asserts that the court should have considered his arguments that his advanced age greatly decreases his chance of recidivism, and that the prison system cannot adequately address his health issues.

To start, the arguments Crafton raises on appeal meaningfully differ from the arguments he made at sentencing and in his motion requesting a downward variance.  On appeal, Crafton presents—for the first time—several arguments concerning the Sentencing Commission's research on the relationship between advanced age and recidivism.  We cannot say the district court committed procedural error, let alone error that was plain, by failing to consider arguments that were never raised before it. *See United States v. Embry*, 728 F. App'x 544, 548 (6th Cir. 2018) (a sentencing court does not "abuse[] its discretion by failing to consider an argument that

Defendant did not raise, particularly where, as here, the court would have been obligated only to consider—not to accept—the argument"); *United States v. Winfree*, No. 24-1911, 2025 WL 3111234, at *3 (6th Cir. Nov. 6, 2025) (concluding that the sentencing court did not plainly err in not considering recidivism information that the defendant never raised). And the district court was not required to consider research or statistical data compiled by the Sentencing Commission before issuing a sentence. *See United States v. Hymes*, 19 F.4th 928, 935–36 (6th Cir. 2021); *United States v. Bailey*, 27 F.4th 1210, 1219 (6th Cir. 2022) (Gilman, J., concurring) (explaining that the district court did not err in failing to consider the Sentencing Commission's age-based recidivism data).

As to the mitigating arguments regarding his age and health issues that Crafton did assert below, we are satisfied based on the record before us that the district judge properly considered them. *See United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008); *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). At sentencing, Crafton requested a downward variance from his Guidelines range on the basis of "just general personal characteristics," which included "[his] age, health issues, his background, things of that nature." DE 97, Tr. Sent. Hr'g, Page ID 723–24. Crafton did not offer any further reasoning regarding his age or health issues—these short statements were the extent of his argument before the district court. Although Crafton also filed a motion requesting a downward variance ahead of his sentencing hearing, it does not add much substance to his claims. As to his age, Crafton's motion summarily stated that he "[was] 50 years of age." DE 88, Mot. Downward Variance, Page ID 598. Regarding his health issues, the motion simply stated that Crafton had "a variety of issues including back and neck pain related to previous vehicle accidents, as well as nerve damage," and further shared that he suffered from depression. *Id.* at 598–99.

It is not clear that the district court failed to consider these arguments. During Crafton's sentencing, the district judge confirmed that Crafton was requesting a downward variance based in part on his "physical history and characteristics," which Crafton had established included his "age" and "health issues," before stating that "the Bureau of Prisons is able to take into account" those concerns as they were "not so unusual." DE 97, Tr. Sent. Hr'g, Page ID 723–24, 729–30. And upon request from Crafton, the district court recommended that "the Bureau of Prisons

consider the defendant's medical needs and also place the defendant in a facility where those needs can be addressed." *Id.* at 738–39. Although the district court's explanation was brief, this did not make its determination procedurally unreasonable. *See Madden*, 515 F.3d at 610–12 (relying on *Rita v. United States*, 551 U.S. 338 (2007), and confirming that a district court has discretion to determine how much explanation is necessary when addressing a defendant's arguments for a reduced sentence).

Moreover, when announcing Crafton's sentence shortly after this, the court confirmed that it had considered the § 3553(a) factors. Specifically, it had considered the nature and circumstances of the offense and Crafton's background, history, and characteristics, which necessarily included his age and health issues. That is enough to show that the district court both considered and responded to Crafton's mitigating arguments, as well as adequately considered the § 3553(a) factors so as to satisfy our review.[3] *See id.* at 610 ("A district judge need only set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.") (citation modified); *Brooks*, 628 F.3d at 796 (similar).

Accordingly, we affirm Crafton's sentence as procedurally reasonable.

### b. Substantive Reasonableness

We first clarify some confusion in Crafton's briefing on substantive reasonableness. While Crafton states in his brief that he challenges both the procedural and substantive reasonableness of his sentence, he explicitly addresses substantive reasonableness only once, on one page of his brief. He alludes to substantive reasonableness at two other points in his briefing—when he argues that "the Court failed to properly *weigh* Crafton's age and medical

---

[3]Crafton argues that remand is appropriate in his case so that the district court can consider his argument regarding his lower likelihood of recidivism, as there is no evidence that the district court considered his claim. But Crafton did not present this claim in the district court. As we have stated, the district court cannot be faulted for not considering an argument that was never presented, and Crafton may not present arguments for the first time on appeal. *See Embry*, 728 F. App'x at 548; *Winfree*, 2025 WL 3111234, at *3. Crafton also contends that the district court must conduct further fact-finding to determine the extent of his health issues, citing *United States v. Johnson*, 71 F.3d 539, 545 (6th Cir. 1995). Crafton's reliance on *Johnson* is misplaced. In that case, Johnson had presented evidence of treatment and diagnoses from two medical doctors including his attending physician and psychiatrist. *Johnson*, 71 F.3d at 544–45. Crafton presented no similar evidence here.

conditions when fashioning an appropriate sentence," and that "*weight* should be given to the 14-year time period in between Crafton's release from confinement and the commitment of the crime at issue in this case." CA6 R. 12, Appellant Br., at 10, 20 (emphasis added); *see United States v. Kerns*, 9 F.4th 342, 347 (6th Cir. 2021) (analyzing the defendant's arguments concerning the *weight* assigned to the defendant's characteristics under substantive reasonableness); *United States v. Boucher*, 937 F.3d 702, 707, 709-714 (6th Cir. 2019) (similar). Thus, we read Crafton's substantive reasonableness challenge as two-fold, asserting that the district court's sentence was substantively unreasonable because the court (1) "failed to properly weigh" his age and health issues, and (2) failed to properly "consider[] the totality of [his] circumstances" regarding his criminal history, "in conjunction with the age of his past conviction." CA6 R. 12, Appellant Br., at 10, 24.[4]

"If we agree that the sentence is procedurally sound, we then consider whether the sentence is substantively reasonable and not 'too long (if a defendant appeals) or too short (if the government appeals).'" *United States v. Zabel*, 35 F.4th 493, 504 (6th Cir. 2022) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)). The "essence" of a claim that a sentence is substantively unreasonable is "whether the length of the sentence is greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010) (citation modified). The substantive reasonableness inquiry ultimately directs us to determine whether the district court properly weighed the § 3553(a) factors such that it did not place too much weight on some, and too little on others. *See Rayyan*, 885 F.3d at 442.

Crafton's first argument concerning his sentence's substantive unreasonableness is that the district court gave improper weight to his age and health issues. While it does seem that the

---

[4]The only other reasonable way to characterize Crafton's arguments on appeal would be to view them as challenges to the district court's decision not to depart downward from the Guidelines. However, our circuit has long held that challenges to a district court's decision to deny a downward departure are unreviewable by our court unless the district court incorrectly believed it lacked authority to grant such a departure. *See Madden*, 515 F.3d at 610; *United States v. Skouteris*, 51 F.4th 658, 673 (6th Cir. 2022). Nothing in this record suggests the district court incorrectly believed it lacked authority to grant a downward departure from Crafton's Guidelines range. In light of this and given the government's treatment of these claims as a substantive challenge in its briefing, and Crafton's employment of substantive reasonableness terminology, though scarce, we believe it appropriate to view these arguments as challenges to the substantive reasonableness of Crafton's sentence.

district court assigned greater weight to certain sentencing factors—such as the nature and circumstances of the present offense, Crafton's criminal history, and the need for the sentence imposed—this does not mean that the court unreasonably weighed the factors. We have recognized that one or two factors often prevail while others pale. *See United States v. Gardner*, 32 F.4th 504, 531 (6th Cir. 2022). On the other hand, nothing in the record shows us that the district court arbitrarily selected Crafton's sentence, based it on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an *unreasonable* amount of weight to any factor. *See United States v. Robinson*, 892 F.3d 209, 213 (6th Cir. 2018). As a result, Crafton's sentence was not substantively unreasonable based on the district court's assigning less weight to Crafton's age and health issues than to other relevant factors. *See Gardner*, 32 F.4th at 531.

Crafton's second argument concerning his sentence's substantive reasonableness is that "the district court should have considered the totality of [his] circumstances, in conjunction with the age of his past conviction, when fashioning an appropriate sentence." CA6 R. 12, Appellant Br., at 24. Specifically, Crafton argues that "weight should be given to the 14-year time period in between [his] release" for his 1996 controlled substance distribution conviction, serving as the basis for three out of his four criminal history points, and the crime committed in this case. *Id.* at 20. Crafton further argues that the court should have considered other circumstances in its determination: the twenty-eight years between his 1996 conviction and the conviction in the present case, the difference in the quantities of drugs he trafficked in these cases, and his completion of drug abuse treatment and willingness to continue treatment.

Despite Crafton's arguments to the contrary, it appears the district court properly considered the totality of his circumstances and age of his previous conviction when fashioning his sentence. At sentencing, the district court heard argument and engaged in a lengthy colloquy with Crafton regarding his previous conviction. In doing so, the court clearly weighed the length of time since Crafton's 1996 conviction and the fact that Crafton was one year away from his prior conviction no longer counting towards his criminal history points under the Guidelines. And after considering these circumstances, the court concluded that while it "underst[ood] the argument about the offense for which he received points being right on the edge," Crafton had not demonstrated that he was able to "maintain a law-abiding record for a substantial time" and

denied his motion for variance on that ground. DE 97, Tr. Sent. Hr'g, Page ID 729. The court then confirmed that it "considered the nature and circumstances of this offense, [Crafton's] background, history, and characteristics, the guideline range . . . and also the 3553(a) factors." *Id.* at 734.

Our court "will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure." *United States v. Herrera-Zuniga*, 571 F.3d 568, 583 (6th Cir. 2009) (citation modified). It is clear from the sentencing hearing transcript that the district court weighed the totality of Crafton's circumstances in conjunction with the time that had passed since his 1996 conviction. In fact, the transcript makes clear that the district court considered these concerns at great length. At bottom, Crafton's argument does not actually address how the district court allegedly improperly weighed the totality of his circumstances but rather seems to raise concerns with the Sentencing Guidelines themselves, specifically § 4A1.1(a), which covers the calculation of his criminal history category. *See* U.S.S.G. § 4A1.1(a). But those concerns are not ours to address. Our job as an appellate court is simply to ensure that the district court did not commit a substantively unreasonable error, such as determining Crafton's sentence arbitrarily, basing it on impermissible factors, failing to consider a relevant sentencing factor, or assigning unreasonable weight to any one factor. *Nunley*, 29 F.4th at 834. We find no such error here.

Considering the totality of the circumstances ourselves, including the Guidelines, the § 3553(a) factors, and Crafton's history and characteristics, we find further reason to view his 210-month sentence as substantively reasonable. *See Robinson*, 892 F.3d at 213 (affirming substantive reasonableness after examining the defendant's "totality of the circumstances"); *United States v. Johnson*, 640 F.3d 195, 209 (6th Cir. 2011) (same). Crafton was implicated in a months-long conspiracy to distribute methamphetamine, a harmful and addictive drug, in the Eastern District of Tennessee. He is ultimately being held responsible for just under 4,000 total grams of methamphetamine. Crafton further advised a CS that he had multiple substances for sale during this time, including "Adderall, Xanax, Ecstasy, 7.5s, 10s, and Roxies." Crafton also has a lengthy criminal history dating back to when he was twenty years old, which includes several misdemeanor charges, some involving drugs, and at least one assault charge, received

after his 1996 conviction for controlled substance distribution. And we agree with the district court that several of these charges, which resulted in guilty pleas, show a disrespect for the law.

It is our duty to respect the district court's "reasoned discretion" to weigh the § 3553(a) factors when fashioning a sentence. *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). And a within-Guidelines sentence, such as Crafton's, is presumptively reasonable. *Id.* There is nothing on the record that convinces us to rebut this presumption. Notably, after weighing the sentencing factors, the court sentenced Crafton at the bottom of his 210 to 240 months' Guidelines range. *See United States v. Massey*, 663 F.3d 852, 860 (6th Cir. 2011) (confirming that substantive reasonableness requires that a sentence not be greater than necessary to satisfy the purposes of sentencing in light of the § 3553(a) factors). To be sure, 210 months' imprisonment is a lengthy sentence, especially in light of Crafton's age and health issues, but it is a conclusion that requires our due deference. *See United States v. Petrus*, 588 F.3d 347, 353 (6th Cir. 2009) ("In general, we must give 'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." (citation modified)). While we might reasonably conclude that a different sentence was appropriate, that is insufficient to justify reversing the district court. *Id.* at 353–54. We therefore affirm Crafton's sentence as substantively reasonable.

**IV.**

For the foregoing reasons, we reverse the district court's sentence with respect to Hawkins and remand for resentencing consistent with this opinion, and we affirm Crafton's sentence as reasonable.